# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| THE NIKI AND DARREN | ) | |
| IRREVOCABLE TRUST AND THE N | ) | C.A. No. 2019-0302-SG |
| AND D DELAWARE IRREVOCABLE | ) | |
| TRUST | ) | |
| | ) | |

## MEMORANDUM OPINION

Date Submitted:  October 13, 2020
Date Decided:  February 4, 2020

Jon E. Abramczyk, Todd A. Flubacher, Matthew R. Clark, and Aubrey J. Morin, of MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware, *Attorneys for Petitioner Comerica Bank & Trust, NA*.

W. Donald Sparks, II, Chad M. Shandler, and Christine D. Haynes, of RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware, *Attorneys for Respondent Darren James Rushin*.

William M. Kelleher, Kimberly G. McKinnon, and Phillip A. Giordano, of GORDON, FOURNARIS & MAMMARELLA, P.A., Wilmington, Delaware, *Attorneys for Ildiko Juhasz de Tesak*.

Matthew P. D'Emilio, Thomas A. Uebler, and Hayley M. Lenahan, of MCCOLLOM D'EMILIO SMITH UEBLER LLC, Wilmington, Delaware, *Attorneys for Claudia Elena Tesak de Rushin*.

GLASSCOCK, Vice Chancellor

The doctrine of unclean hands is unique to equity and has no analog at law. Unlike most legal doctrines, its aim is not to aid the search for truth, or even to promote justice for the litigants. Its purpose is protection of the reputation of equity itself, and of those courts that exist to provide equity. The awesome power of equity, as opposed to the limited civil power of the law courts, would be intolerable unless stringently cabined by a doctrine under which Chancery withholds this power where invoked by wrongdoers whose bad acts are a part of the cause of action itself. Where, for instance, a petitioner has transferred bare title to property to a relative in order to defeat a levy on the property, and then later, when the relative refuses to return the title, asks this court to impose a trust in his favor, this Court will not give him equitable relief, because to do so would involve this Court in the underlying deceptive act itself.[1]

The hypothetical above provides an easy example of the application of unclean hands; the analysis required in the matter before me is subtler, but ultimately reaches the same result. Here, a settlor, Ildiko Juhasz de Tesak ("Ildiko")[2] created a trust with herself as trustee and life beneficiary of the income. Upon her death, the trust corpus was to continue in trust in two shares; one for her daughter Claudia

---

[1] *See Hill v. Haas*, 1991 WL 33569, at *2 (describing *Haggerty v. Wilmington Trust Co.*, 191 A. 134 (Del. Ch. 1937) as holding "that the placing of a son's name on a deed at the direction of the father, if done with intent to defeat creditors, constitutes unclean hands which will prevent a Court of Equity granting the father relief even if by so doing it rewards the fraud of the son").

[2] For the sake of clarity and simplicity, I follow the example of the litigants and refer to the individual parties by first (or nick-) name. I intend no disrespect thereby.

1

Elena Tesak de Rushin ("Niki"), and one for her son-in-law Darren Rushin ("Darren"). Niki would receive 55% of the corpus in trust, and Darren 45%.

More than two years later, in 2014, Ildiko, as trustee, moved the situs of the trust to Delaware, and appointed the Petitioner, Comerica Bank & Trust, NA ("Comerica") as co-trustee. Immediately thereafter, the trustees "decanted"[3] the entire corpus of the trust into a new irrevocable trust. This second trust has similar terms to the original trust, but in two respects is favorable to Darren, at Ildiko's (and Niki's) expense. First, the remainder interest in the second trust would vest equally in Niki and Darren. Second, and more consequential here, is the effect of divorce between Niki and Darren in Ildiko's lifetime. Under the terms of the original trust, such a divorce was inconsequential; vesting would occur in the remainder beneficiaries only upon Ildiko's death. Under the second trust, however, such a divorce would immediately cause Darren's half-interest to vest, leaving only half of the corpus in trust for the benefit of Ildiko and, upon Ildiko's death, for the benefit of Niki. The record does not reflect the reason for imposition of this term in the second trust. All three of the beneficiaries signed consents (or non-objections) to the decanting. Comerica is the sole trustee of the Second Trust.

---

[3] In the argot of the trust bar, "decanting" is the pouring of the contents from the old bottle of an existing trust into the new bottle of a (typically) recently-created trust.

Several years have passed, and, sadly, Niki and Darren's marriage has ended in divorce. Under the terms of the second trust, therefore, half the corpus should vest in Darren. Ildiko is not satisfied with this result, however.

In this action, the trustees of both trusts[4] ask this Court to declare that their decanting of the original trust was an illegal act. The decanting failed to comply, they argue, with Delaware's statutory law regarding decanting as it then existed, in two ways. First, in order to lawfully decant, a trustee must have been able to invade the trust principal under the terms of the original trust—a power the Petitioners claim Ildiko lacked (but which she provided to the trustee of the second trust). Next, the trustees aver that the second trust was not substantially identical to the first in its treatment of beneficiaries, as required by the decanting statute. It is axiomatic that trustees are fiduciaries for the trust and its beneficiaries, and that resulting duties include care and loyalty.[5] Those duties require knowledge of and compliance with applicable law when taking actions on behalf of the trust. Ildiko and Comerica are

---

[4] The Petitioner is Comerica, presumably because Ildiko wished to avoid application of an *in terrorem* clause in the second trust. *See* Dec. 19, 2019 - Oral Arg. and Rulings of the Ct. on Ildiko Juhasz de Tesak's Mot. for Safe Harbor Decl. Regarding Pet. for Instrs. and Claudia Elena Tesak de Rushin's Mot. for Declaratory J., Dkt. No. 57 [hereinafter "Safe Harbor Ruling"]. Because Ildiko supports the motion of her co-trustee, Comerica, I consider both to be seeking equitable relief here. Niki also has joined in the motion.

[5] *In re Nat'l Collegiate Student Loans Trusts Litig*., 2020 WL 5049402 at *53 n.421 (Del. Ch. Aug. 27, 2020) ("'In general, the duties of a trustee to trust beneficiaries' are 'loyalty, good faith, and due care' which are 'broadly similar to those of a corporate director to his corporation.'" (quoting *Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1134, 1148 (Del. Ch. 1994), *aff'd*, 663 A.2d 1156 (Del. 1995))).

thus in the anomalous position of pointing out that the actions they took in decanting were in clear violation of positive law, presumably also violating their trust duties, and that the decanting is void as a result.

Ildiko's commission of this unlawful act, as trustee, is, in her view, quite fortuitous. It allows her, as trustee, to invoke equity to declare the decanting a nullity. As a result, per Ildiko, equity should provide relief as though the corpus of the original trust *was never transferred to the second trust.* The corpus must be returned to the original trust, *nunc pro tunc*, subject to the constraints of that trust, under which Darren's share does not vest until Ildiko's death. In other words, Ildiko, as trustee of both trusts, asks me to find that her (and Comerica's) unlawful act in 2014 results in a benefit *to her as beneficiary* of the trusts, to the detriment of another beneficiary, Darren.

The matter is before me on Comerica's motion—joined by Ildiko—for judgment on the pleadings. Before reaching the merits of the contentions, I find that unclean hands is a predicate issue: can a trustee invoke equity to find that she acted unlawfully[6] with respect to the assets in trust, and thus reverse that action and declare that the assets remain in that trust, in a way that will directly benefit that trustee as a

---

[6] I assume without finding that the decanting violated the then-current decanting statute. Because I find unclean hands applies, I do not reach this issue on its substance. It is irrelevant to unclean hands. The equitable relief the trustees seek here *requires* a finding that they violated the decanting statute; they cannot prevail absent such a finding.

beneficiary, to the detriment of another beneficiary? I assume for purposes of this pleading-stage motion that the 2014 decanting was accomplished *sans* scienter; that is, that the trustees did not intend to violate positive law or undertake a void and unlawful decanting. Nonetheless, may a petitioner invoke equity to benefit from her own illegal act as trustee? I find that the answer (under these facts) is no—that to apply equity in favor of the trustee, allowing her to benefit from her own unlawful act, would sully equity itself. This applies as well to Comerica, which also maintains that its act in the decanting was illegal, and asks the Court to find the act a nullity to the detriment of its beneficiary, Darren. Because, even assuming that the Petitioner could demonstrate the illegality of the decanting, I am precluded from using equity to replenish the original trust, I need not consider Darren's contention that the decanting was, in fact, effective under the decanting statute, or that affirmative defenses apply. Comerica's Motion for Judgment on the Pleadings is denied. My reasoning is below.

*A. Facts*

Two trusts are implicated in this case. The first, the Niki and Darren Irrevocable Trust (the "Original Trust") was settled by Ildiko on April 30, 2012.[8] Ildiko was the settlor, the trustee, and the sole life beneficiary of the Original Trust.[9] The Original Trust was governed by the laws of California, and its trustee, Ildiko, was authorized to distribute to the beneficiary, Ildiko, "as much of the annual net income of the Trust . . . as [she] may request."[10] However, the trustee was not explicitly authorized to distribute any portion of the Original Trust's principal to the beneficiary.[11] Upon Ildiko's death, the Original Trust would be divided into two shares to be held in further trust; the first share, holding 55% of the balance of the Original Trust's assets, would be held on behalf of Ildiko's daughter, Niki, and the second share, holding the remaining 45%, would be held for the benefit of Niki's husband, Darren.[12] On December 24, 2014, Ildiko, in her capacity as trustee, moved the situs of administration of the Original Trust to Delaware, changed the governing

---

[7] I base the facts for this ruling on the parties' pleadings, together with the attachments thereto. The facts are undisputed.

[8] Revised Opening Br. in Supp. of Pet'r's Mot. for J. on the Pleadings 1, 3, Dkt. No. 102 [hereinafter "Comerica OB"].

[9] Comerica OB 3.

[10] Comerica OB 3–4.

[11] Comerica OB 3.

[12] Comerica OB 3.

law to Delaware, and appointed Petitioner Comerica to be co-trustee of the Original Trust.[13]

That same day, Ildiko settled another trust, the N and D Irrevocable Trust (the "Second Trust").[14] Comerica was appointed the sole trustee[15] and Ildiko remained the beneficiary.[16] After settling the Second Trust, Ildiko and Comerica (the "Trustees"), as trustees of the Original Trust, "decanted" the Original Trust corpus into the Second Trust.[17] Ildiko, in her capacity as one of the Original Trust's two co-trustees, and Comerica executed a trustee resolution (the "Trustee Resolution") purporting to "exercise [her] discretionary power to distribute all of the principal and income of the Original Trust and appoint all of the principal and income of the Original Trust to Comerica . . . as trustee of the Second Trust . . . ."[18] According to Comerica, this was done in light of Delaware's Decanting Statute, 12 *Del. C.* § 3528, as it existed in 2014 (the "Decanting Statute") when the Second Trust was settled. Ildiko, Niki, and Darren, as beneficiaries of the Original Trust, all signed

---

[13] Resp't Darren Rushin's Combined Opening Br. in Supp. of his Cross-Mot. for J. on the Pleadings and Answering Br. in Opp'n to Comerica's Mot. for J. on the Pleadings 12, Dkt. No. 106 [hereinafter "Darren OB-AB"].

[14] Comerica OB 1, 4; Darren OB-AB 11–12.

[15] Comerica OB 5.

[16] Comerica OB 6.

[17] Verified Pet. for Instrs. Pursuant to 10 Del. C. Section 6504 ("Verified Pet."), Ex. D, Dkt. No. 1.

[18] Comerica OB 10; Verified Pet., Ex. D.

acknowledgements and statements of non-objection or consent to the supposed

decanting within three months of the execution of the decanting.

The Decanting Statute provides that:

> A trustee who has authority . . . to invade the principal of a trust . . . to make distributions to, or for the benefit of, 1 or more proper objects of the exercise of the power, may instead exercise such authority by appointing all or part of the principal subject to the power in favor of a trustee of a trust (the "second trust") under an instrument other than that under which the power to invade is created . . . .[19]

Such power is cabined, however, by two requirements pertinent here: (1) that "[t]he

exercise of such authority is in favor of a second trust having only beneficiaries who

are proper objects of the exercise of the power" and (2) that "the remaining trust

assets shall thereafter be held for the benefit of the beneficiaries of the first trust

*upon terms and conditions* concerning the nature and extent of each such

beneficiary's interest *that are substantially identical to the first trust's terms and*

*conditions* concerning such beneficial interests."[20]

Comerica, joined by Ildiko and Niki, now alleges that the Trustees' act in

decanting the Original Trust was unlawful in two ways. First, they point out, the

trust agreement of the Original Trust did not explicitly provide Ildiko with the power

to invade the principal of the Original Trust, and, therefore, under the Decanting

---

[19] 12 *Del. C.* § 3528 (2014).
[20] *Id.* (emphasis added).

Statute, she lacked the ability to transfer the assets to the Second Trust.[21] Next, they point out that there were significant differences between the Second Trust and the Original Trust in its treatment of the beneficiaries, and such differences made the attempted decanting violative of the Decanting Statute requirement that beneficiary treatment in the new trust be "substantially identical" to the old trust.[22] Ildiko and Comerica point out that the Second Trust permits the trustee to provide for Ildiko from the principal of the Second Trust, although the Original Trust did not.[23] Additionally, and most significantly, Comerica alleges that the Second Trust had different distribution mechanisms depending on whether Niki and Darren remain married. Specifically, during Ildiko's lifetime, if Niki and Darren remain married, Ildiko is the sole beneficiary of the Second Trust.[24] Upon her death, if Niki and Darren remain married, the Second Trust is to be divided into two *equal* shares; thus, the Second Trust is more favorable to Darren than the Original Trust, with its 55/45% split.[25] And if Niki and Darren divorce during Ildiko's lifetime, upon issuance of a divorce decree, Darren's remainder interest in half of the Second Trust's assets is to

---

[21] Comerica OB 19.
[22] Comerica's Opening Brief enumerates six differences which, if true, would go to the merits of the issue of whether the decanting of assets from the Original Trust into the Second Trust is void. Because I find Ildiko and Comerica have unclean hands, however, I do not reach the merits. I therefore only list the first three enumerated differences, which provide, in my view, sufficient context as to why Ildiko and Niki wish to have the decanting declared void.
[23] Comerica OB 6.
[24] Comerica OB 6.
[25] Comerica OB 6–7.

9

be immediately spun out and held in further trust for Darren.[26]  Darren would then be immediately entitled to distributions of both the income and principal of that separate trust.[27]  Niki, however, would still have to survive Ildiko to claim her remainder interest, just as she and Darren both would have had to do under the terms of the Original Trust regardless of their marital status.[28]  In other words, the Second Trust was more favorable to Darren than the Original Trust in case Niki and Darren divorced in that the assets of the Second Trust would vest in trust for Darren upon the divorce.  By contrast, vesting occurs under the terms of the Original Trust only upon Ildiko's death.  Niki and Darren have, in fact, divorced, and the Trustees now argue that, as the decanting was unlawful, the terms of the Original Trust—more favorable to Niki and Ildiko—apply here.

*B. Procedural History*

Comerica filed its Verified Petition for Instructions Pursuant to 10 *Del. C.* Section 6504[29] on April 22, 2019, requesting instruction from this Court as to whether the purported decanting was void, and whether the Court should order that the Second Trust's assets be returned to the Original Trust *nunc pro tunc*.[30] On May 14, 2019, Ildiko filed a Motion for Safe Harbor Declaration, noting that the Second

---

[26] Comerica OB 7.
[27] Comerica OB 7.
[28] Comerica OB 7.
[29] Verified Pet.
[30] Verified Pet. ¶ 55.

Trust's trust agreement (the "Second Trust Agreement") contained an *in terrorem* clause[31] and arguing that, because Comerica was not a beneficiary but only a trustee, the *in terrorem* clause had not been triggered and would not be triggered by her participation.[32] Darren opposed the Motion for Safe Harbor Declaration on June 7, 2019[33] and on July 31, 2019, Niki filed a Motion for Declaratory Judgment also arguing that the *in terrorem* clause should not apply if she participated.[34] I heard oral argument on both Ildiko's Motion for Safe Harbor Declaration and Niki's Motion for Declaratory Judgment on December 19, 2019, and found that because the Verified Petition did not seek to void the Second Trust, the no contest clause was not applicable to this matter.[35]

---

[31] The *in terrorem* clause reads: "No Contest Clause. In the event any beneficiary under any trust created under this instrument shall, singly or in conjunction with any other person or persons, contest in any court the validity of this instrument, or seek to obtain an adjudication in any proceeding in any court that this instrument is void, or seek otherwise to void, nullify, or set aside this instrument, then the right of that person to take any interest given to that person by this instrument shall be determined as if that person predeceased the execution of this instrument without descendants surviving. The Trustee may defend, at the expense of the Trust Estate, any contest or other attack of any nature on these trusts."

[32] Ildiko Juhasz de Tesak's Mot. for Safe Harbor Decl. Regarding Pet. for Instrs. ¶¶ 1–2, 8, Dkt. No. 7. Comerica filed a letter informing the Court that it did not oppose the relief sought in Ildiko's Motion for Safe Harbor Declaration. *See generally* Ltr. to Vice Chancellor Glasscock from Matthew R. Clark, Dkt. No. 12.

[33] Ltr. to The Honorable Sam Glasscock, III from Chad M. Shandler dated June 10, 2019, Dkt. No. 13.

[34] Claudia Tesak de Rushin's Mot. for Declaratory J. with Certificate of Service, Dkt. No. 22.

[35] Safe Harbor Ruling, at 30–32.

Darren filed his Answer, Counterclaims, and Cross-Claims to the Verified Petition on August 27, 2019.[36] Comerica and Ildiko responded to the counterclaims or cross-claims in February of 2020.[37] On April 23, 2020, Comerica filed a Motion for Judgment on the Pleadings,[38] which was joined in by both Ildiko and Niki five days later.[39] Darren filed an Amended Answer, Counterclaims, and Cross-Claims shortly thereafter,[40] claiming (1) that Comerica had breached its fiduciary duties as trustee of both the Original Trust and the Second Trust, (2) that Ildiko had breached her fiduciary duty as trustee of the Original Trust, (3) that Ildiko had aided and abetted Comerica's breach of fiduciary duties, and (4) civil conspiracy between Ildiko and Comerica.[41] Ildiko and Comerica responded on June 10 and June 23, 2020, respectively.[42] Comerica made a revised Motion for Judgment on the

[36] Darren J. Rushin's Answer to the Verified Pet. for Instrs. and Verified Countercls. and Cross-cls., Dkt. No. 32.

[37] Pet'r-Countercl.-Def.'s Resp. to Verified Countercl. with Certificate of Service, Dkt. No. 59; Ildiko Juhasz de Tesak's Resp. to the Pet. for Instrs. and Resp. to Darren Rushin's Countercls. and Cross-cls., Dkt. No. 62.

[38] Pet'rs' [*sic*] Mot. for J. On The Pleadings with Certificate of Service, Dkt. No. 81.

[39] Ildiko Juhasz de Tesak's Joinder in Pet'r's Mot. for J. on the Pleadings, Dkt. No. 86; Niki's Joinder to Comerica's Mot. for J. on the Pleadings, Dkt. No. 87.

[40] Darren J. Rushin's Am. Answer to the Verified Pet. for Instrs. and Verified Am. Countercls. and Cross-cls. with attached certificate of service, Dkt. No. 95.

[41] *Id.* ¶¶ 40–68. Darren also seeks, as Counts VI and VII, the removal of Comerica as trustee of both the Original Trust and the Second Trust.

[42] Ildiko Juhasz de Tesak's Resps. to Darren Rushin's Am. Countercls. and Cross-cls., Dkt. No. 99; Pet'r-Countercl.-Def.'s Resp. To Verified Am. Countercls. with Certificate of Service, Dkt. No. 100.

12

Pleadings on June 30, 2020[43] which was again joined in by both Ildiko and Niki.[44] On July 14, 2020, Darren responded to the Petitioner's Motion and filed his own Cross-Motion for Judgment on the Pleadings.[45] After reply briefs were exchanged, I heard Oral Argument on October 13, 2020 and I consider the matter fully submitted as of that date.[46]

## II. ANALYSIS

On these cross-motions for judgment on the pleadings, I must accept as true all of the nonprevailing party's well-pleaded factual allegations and make all reasonable inferences in that party's favor.[47] The material facts—the distribution schemes of the Original Trust and the Second Trust, the identities of the settlor, beneficiaries, and trustees of both Trusts, and the assets that were purportedly decanted—are not in dispute. Most importantly, the parties do not dispute that Ildiko settled the Second Trust, that she, as a beneficiary of the Original Trust, signed a consent to and, as the trustee of the Original Trust, effected the purported decanting from the Original Trust to the Second Trust in 2014, and that the Second Trust's provisions regarding beneficiaries are not substantially identical to those of the

---

[43] Comerica OB.

[44] Ildiko Juhasz de Tesak's Revised Joinder in Pet'r's Mot. for J. on the Pleadings, Dkt. No. 103; Niki's Revised Joinder to Comerica's Mot. for J. on the Pleadings, Dkt. No. 104.

[45] Resp't James [*sic*] Darren Rushin's Cross-Mot. for J. on the Pleadings, with attached certificate of service, Dkt. No. 105; Darren AB-OB.

[46] Tr. of 10.13.20 Oral Arg. Held Via Zoom on Cross-Mots. for J. on the Pleadings, Dkt. No. 124 [hereinafter "Oral Arg. Tr."].

[47] *TravelCenters of Am. LLC v. Brog*, 2008 WL 5272861, at *2 (Del. Ch. Dec. 5, 2008).

13

Original Trust. Because these central facts are not in dispute, this case is ripe for judgment on the pleadings.

It is a maxim of equity, however, that a wrongdoer with respect to the transaction at issue may not invoke equitable relief.[48] This maxim, known as the unclean hands doctrine, "is aimed at providing courts of equity with a shield from the potentially entangling misdeeds of the litigants in any given case."[49] That is, the doctrine is a matter of equitable policy, and to the extent it is a defense, it is a defense belonging, not to any defendant, but to the court of equity itself. "In effect, the Court refuses to consider requests for equitable relief in circumstances where the litigant's own acts offend the very sense of equity to which he appeals."[50] To do otherwise would involve the court itself in the inequitable acts that the petitioner seeks to vindicate. Unclean hands may apply regardless of the merits of the pleadings.[51]

Such was the case in *Nakahara v. NS 1991 American Trust*,[52] a case I find analogous here. In that case, the plaintiffs, who were managing trustees of a Delaware business trust,[53] had satisfied all the contractual prerequisites to obtaining

---

[48] *See, e.g.*, *Bouchard v. Braidy Indus., Inc.*, 2020 WL 2036601, at *13 (Del. Ch. Apr. 28, 2020).
[49] *Nakahara v. NS 1991 Am. Tr.*, 718 A.2d 518, 522 (Del. Ch. 1998).
[50] *Id.*
[51] *In re Rural/Metro Corp. S'holders Litig.*, 102 A.3d 205, 237 (Del. Ch. 2014) (quoting *Skoglund v. Ormand Indus., Inc.*, 372 A.2d 204, 213 (Del. Ch. 1976)).
[52] 739 A.2d 770 (Del. Ch. 1998).
[53] *Id.* at 772.

advancement for a suit in New York and would have been entitled to the advancement had Chancellor Chandler not found that the plaintiffs had unclean hands.[54] Specifically, the plaintiffs were involved in other judicial proceedings and had entered a standstill agreement to preserve the assets of a trust for whoever was determined to ultimately be the rightful beneficiary.[55] The plaintiffs violated that standstill agreement, however, and engaged in "self-help" to withdraw approximately $700,000 in order to defend against the New York suit—the action for which the advancement was sought.[56] Chancellor Chandler found that the plaintiffs were entitled to advancement, but held that he could not, "in good conscience authorize the advancement" because of the plaintiffs' unclean hands in violating the standstill agreement and engaging in self-help to fund the very suit for which they sought advancement.[57]

This Court has "wide latitude" in considering unclean hands, though there are some limitations; for example, "the inequitable conduct must have an 'immediate and necessary' relation to the claims under which relief is sought."[58] The doctrine of unclean hands has been invoked to deny relief to parties who have committed fraud or breached duties to their own benefit. For example in *In re Wilbert L.*:

---

[54] *Id.* at 791.
[55] *Id.* at 774.
[56] *Id.* at 775.
[57] *Id.* at 791.
[58] *Id.* at 523.

15

A woman adopted her ex-husband so that he would become a beneficiary of a trust . . . [in order] to alter the trust's distributive scheme for the benefit of their children. Before the adoption, the ex-husband had promised his ex-wife, who is one of the trustees, and their children, who are among the beneficiaries of the trust, that he would not take any beneficial interest in the trust. After the adoption, the ex-husband changed his mind and decided to keep his beneficial interest.[59]

In aid of that interest, the ex-husband attempted to invoke equity in this court.[60]

The Court ruled that the ex-husband had a confidential relationship, based on trust, with his ex-wife and the other beneficiaries of the trust, including his children.[61] The ex-husband's about-face on keeping the trust's benefits for himself, in spite of his pre-adoption commitments not to, was a breach of that confidential relationship. Accordingly, the Court concluded that the ex-husband had unclean hands and was barred from seeking the Court's aid in "claiming any personal economic benefit . . . in the [t]rust."[62]

I find that, here, the situation is much the same—a dispute between family members over distributions from a family trust, based on the past conduct of one of the family members—here both trustee and life beneficiary. This case was briefed around one central issue: whether the assets of the Original Trust were validly

---

[59] *In re Wilbert L.*, 2010 WL 3565489, at *1 (Del. Ch. Sept. 1, 2010).

[60] Specifically, the ex-husband, who was the defendant, requested an order "[c]onstruing the Trust Agreement to determine that [he] is a grandchild under the terms of the Pokeberry Trust." *Id.* at *5 n.56. The Court noted, however, that "as a practical matter, [the ex-husband] cannot obtain what he wants out of the Trust or these proceedings without some sort of affirmative relief," and applied the doctrine of unclean hands to bar him from that relief. *Id.*

[61] *Id.* at *6.

[62] *Id.*

decanted into the Second Trust. Both trusts were settled by the same person, Ildiko, who is also a beneficiary of both trusts, and who was the initial sole trustee of the Original Trust. Ildiko—with Petitioner Comerica, who is a trustee of *both* the Original Trust and the Second Trust—now, *four years later*,[63] seeks to have the purported decanting declared void as noncompliant with the Decanting Statute—a decanting that Ildiko and Comerica executed *themselves*, as the trustees of the Original Trust. In effect, Ildiko is asking this Court to declare void an action that she took over six years ago,[64] an action which now appears to be to her detriment and to another beneficiary's benefit, in what I may categorize as an attack of late-onset settlor's remorse.

To be clear, as the settlor and creator of the Second Trust, Ildiko, for reasons of her own, determined to create a trust that had certain benefits for Darren, compared with the Original Trust. It also purported to benefit Ildiko herself: the Second Trust, unlike the Original Trust, allows the trustee to invade the principal on Ildiko's behalf. As the trustee of the Original Trust, Ildiko decided to place its corpus into that Second Trust. Ildiko then enjoyed the benefits of being a beneficiary of the Second Trust, including, presumably, distributions from the Second Trust, for several years. Only when conditions made her regret her prior decanting decision

---

[63] As of the time of the filing of the Verified Petition.
[64] As of the date of this decision.

17

did she and Comerica decide to attack the legitimacy of their own actions in funding the Second Trust. To invoke equity as a remedy for those actions is, I find, itself offensive to equity. Having previously acted in a fiduciary capacity to settle and fund a trust through what she now asserts were illegal means, Ildiko cannot invoke equity for relief from that action, in her own self-interest—relief, I note, that would be to the detriment of Darren, toward whom she owes fiduciary duties. In other words, Ildiko cannot rely on past unlawful conduct as a fiduciary as the key that turns the lock to release her from the results of such conduct.

It is worth noting, I think, that unclean hands is not available where the result of applying the doctrine would itself be inequitable. So, in *Portnoy v. Cryo-Cell*,[65] then-Vice Chancellor Strine refused to apply the doctrine where it would affect innocent equity-holders. The analog to those equity-holders here, perhaps, is Niki. Nothing, I note, prevents Niki from pursuing Ildiko or Comerica for breach of trust with respect to the decanting of the Original Trust, if she finds it appropriate to do so.[66] Further, there is no allegation that this Court's application of unclean hands will work an inequity because of some wrongful action on Darren's part—no such action is alleged.

---

[65] *Portnoy v. Cryo-Cell Int'l, Inc.*, 940 A.2d 43, 81 (Del. Ch. 2008).
[66] Absent, of course, applicable defenses.

I have principally discussed unclean hands with respect to Ildiko. The fact that her co-trustee, Comerica, is sponsoring the Verified Petition does not impede me from applying the doctrine here. Comerica was a co-trustee of the Original Trust and thus had a duty to ensure that the assets were not decanted from the Original Trust in violation of the Decanting Statute. Having failed in that duty, it cannot now, four years later, invoke equity to correct its mistake in such a way that would benefit one of its beneficiaries to the detriment of another, in light of the benefiting beneficiary's actions discussed above.[67] Accordingly, the doctrine of unclean hands bars me from hearing the merits of the Verified Petition and the Petitioner's Motion for Judgment on the Pleadings is denied.[68]

### III. CONCLUSION

For the reasons set forth above, Comerica's Motion for Judgment on the Pleadings is denied. The parties should provide an appropriate form of order and inform the Court what other issues[69] remain outstanding.

---

[67] I also note that Darren, as a beneficiary of the Original Trust, signed a consent to the purported decanting—in fact all three beneficiaries, Ildiko, Niki, and Darren, did. The non-fiduciary beneficiaries, in giving their consent, would have presumably so acted in the belief that their trustees, Ildiko and Comerica, were acting to their benefit, and in compliance with applicable law, as was the Trustees' duty as fiduciaries. *See Guttman v. Huang*, 823 A.2d 492, 506 n.34 (Del. Ch. 2003) ("[O]ne cannot act loyally as a corporate director by causing the corporation to violate the positive laws it is obliged to obey. . . . the duty of 'legal fidelity' . . . is already a subsidiary element of the fundamental duty of loyalty."). And it seems to me that reasonable beneficiaries would have ordered their affairs according to what their trustees held out to be a valid decanting.

[68] It may be true that Comerica and Ildiko would be able to demonstrate that the decanting was illegal, and thus voidable or void. Even so, I cannot reach that determination having already concluded that the Petitioners, due to unclean hands, may not be heard in this Court on this claim.

[69] Among the remaining issues may be Darren's request to remove the trustees.

19